# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

NYMBUS, INC.,
    *Plaintiff*,

v.

SCOTT SHARP,
    *Defendant*.

No. 3:17-cv-01113 (JAM)

**ORDER DENYING MOTION TO DISMISS AND MOTION TO TRANSFER**

Plaintiff Nymbus, Inc. is a software development company that used to employ defendant Scott Sharp as its chief operating officer until they had a falling out and Sharp left his employment there. Plaintiff now alleges claims against defendant for breach of fiduciary duty and breach of contract. Defendant moves to dismiss this action on grounds of lack of personal jurisdiction and improper venue or, alternatively, to have this action transferred to the Northern District of Texas. Plaintiff counters that this action should proceed in the District of Connecticut pursuant to plaintiff's choice of forum in accordance with the parties' forum selection clause. I agree with plaintiff and will deny defendant's motions.

## BACKGROUND

Plaintiff is a software company incorporated in Delaware and headquartered in Florida that develops software platforms for various industries. Around January 2015, plaintiff began working on a new core processing platform for financial institutions including community banks and credit unions.

As part of its expansion into the financial industry, plaintiff sought to partner with a business that had an established technical competency in core processing systems in the financial industry. To that end, plaintiff acquired a core processing platform known as Sharp BancSystems

1

(SBS) from four banks owned by defendant and his family members by way of a stock purchase and sale agreement dated January 8, 2016. Pursuant to the agreement, plaintiff acquired all of the issued and outstanding stock of SBS from defendant's banks. Relying on defendant's representation that he possessed competency in the field of core processing platform development and operation, plaintiff hired defendant to serve as plaintiff's chief operating officer (COO). Plaintiff and defendant entered into an employment agreement (the "Agreement") dated December 31, 2015.

The Agreement sets forth the terms and conditions of employment, including defendant's duties and his salary and benefits. The parties agreed that defendant would work out of an office in the Dallas/Fort Worth area in Texas. The Agreement limited how much time defendant would be required to spend working outside of his home area in Texas. The Agreement is governed by Texas law. Critical to the resolution of this motion is the following clause in the Agreement under the heading "Governing Law: Submission to Jurisdiction and Waiver of Jury Trial":

> ANY LEGAL SUIT, ACTION OR PROCEEDING ARISING OUT OF OR BASED UPON THIS AGREEMENT . . . MAY BE INSTITUTED IN THE FEDERAL COURTS OF THE UNITED STATES OF AMERICA OR THE COURTS OF THE STATE OF TEXAS, AND EACH PARTY IRREVOCABLY SUBMITS TO THE EXCLUSIVE JURISDICTION OF SUCH COURTS IN ANY SUCH SUIT, ACTION OR PROCEEDING. . . . THE PARTIES IRREVOCABLY AND UNCONDITIONALLY WAIVE ANY OBJECTION TO THE LAYING OF VENUE OF ANY SUIT, ACTION OR ANY PROCEEDING IN SUCH COURTS AND IRREVOCABLY WAIVE AND AGREE NOT TO PLEAD OR CLAIM IN ANY SUCH COURT THAT ANY SUCH SUIT, ACTION OR PROCEEDING BROUGHT IN ANY SUCH COURT HAS BEEN BROUGHT IN AN INCONVENIENT FORUM.

Doc. #2 at 21.

Plaintiff alleges that defendant failed in a number of ways to carry out his primary responsibilities as COO. Consequently, on April 12, 2017, plaintiff placed defendant on paid administrative leave. On June 16, 2017, defendant purported to give plaintiff a "Notice of

2

Termination Employment with Good Reason." Plaintiff responded on July 5, 2017, by sending defendant a "Notice of Termination of Employment For Cause" and separately responding to defendant's notice disputing that defendant had the requisite "Good Reason" to terminate his employment. Plaintiff filed this lawsuit on the same date. Defendant soon filed a lawsuit against plaintiff in Texas state court on or about July 14, 2017, which was removed to the U.S. District Court for the Northern District of Texas on July 24, 2017.[1]

Defendant has moved to dismiss this action under Fed. R. Civ. P. 12(b)(2) & (3), arguing that this Court lacks personal jurisdiction over him and that venue is improper. In the alternative, defendant moves to transfer this case to the Northern District of Texas pursuant to 28 U.S.C. § 1404 or the "first-filed rule." Plaintiff argues that the above-quoted forum selection clause contained in the Agreement constitutes a waiver of any challenge to plaintiff's decision to litigate this matter in this court.

### DISCUSSION

I will first consider the parties' arguments concerning the interpretation of the forum selection clause. Next I will consider whether the clause as applied is enforceable.

***Interpretation of the Forum Selection Clause***

Ascertaining the meaning of a forum selection clause is a "matter of contract interpretation." *Yakin v. Tyler Hill Corp.*, 566 F.3d 72, 75 (2d Cir. 2009). The parties agree that the interpretation of the forum selection clause is governed by Texas law as set forth in the Agreement. "To ensure that the meaning given to a forum selection clause corresponds with the parties' legitimate expectations, courts must apply the law contractually chosen by the parties to interpret the clause." *Martinez v. Bloomberg LP*, 740 F.3d 211, 220 (2d Cir. 2014).

---

[1] The court in the Texas action has stayed that case pending the resolution of this motion. *See* Doc. #13, *Sharp v. Nymbus, Inc.*, 17-cv-00601 (N.D. Tex. 2017).

Under Texas law, a court's primary task in interpreting a contract "is to ascertain the parties' true intent as expressed by the plain language they used." *Great Am. Ins. Co. v. Primo*, 512 S.W.3d 890, 893 (Tex. 2017); *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003). To achieve this objective, the court must "assign terms their ordinary and generally accepted meaning unless the contract directs otherwise." *Great Am. Ins. Co.*, 512 S.W.3d at 893. In addition, a court should examine and consider the entire writing in an effort to harmonize and give effect to all of the contract's provisions so that none are rendered meaningless. *See Frost Nat'l Bank v. L & F Distribs., Ltd.*, 165 S.W.3d 310, 312 (Tex. 2005) (*per curiam*); *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 652 (Tex. 1999); *J.M. Davidson, Inc.*, 128 S.W.3d at 229. "No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument." *J.M. Davidson, Inc.*, 128 S.W.3d at 229.

Upon review of the forum selection clause, I conclude that it is unambiguous and operates as a consent to the jurisdiction of this Court and a waiver of any challenge to venue in this Court. The first sentence clearly conveys that any action arising out of the Agreement "may be instituted in the federal courts of the United States of America or the courts of the State of Texas and each party irrevocably submits to the exclusive jurisdiction of such courts in any such suit." By the terms of the provision, each party agreed *ex ante* to consent to the jurisdiction of any federal court or Texas state court.

Next, the third sentence of the provision states that the parties "waive any objection to the laying of venue of any suit, action, or proceeding in such courts and . . . agree not to plead or claim in any such court that that any such suit, action, or proceeding brought in any such court

has been brought in an inconvenient forum." This language is clear: the parties waived any challenge to venue as well as any argument that the chosen forum is inconvenient.

Defendant argues that the forum selection clause could reasonably be read to select only certain "types of courts" and therefore the clause is at least ambiguous. A contract is ambiguous if it is "subject to two or more reasonable interpretations after applying the pertinent construction principles." *Plains Expl. & Prod. Co. v. Torch Energy Advisors Inc.*, 473 S.W.3d 296, 305 (Tex. 2015). Here, defendant's proposed construction that the provision merely selects "types of courts" but does not speak to personal jurisdiction or venue is at odds with the language in the third sentence of the provision providing that the parties "irrevocably and unconditionally waive any objection to the laying of venue of any suit, action or proceeding in such courts." Doc. #2 at 21. It is unreasonable to construe a clause waiving "any objection to the laying of venue" to permit the two principal objections made to the laying of venue: lack of personal jurisdiction and improper venue. *See WDMG, L.C.C. v. Sirius Satellite Radio, Inc.*, 2008 WL 4998783, at *2 (N.D. Tex. 2008) (noting "the waiver of any objection to venue clause as meaning that the consenting party not only waived its right to filing a change of venue motion, but also any right to attempt to change the forum chosen by the plaintiff"). Accordingly, I conclude defendant's interpretation is unreasonable and, therefore, the clause is not ambiguous.

Defendant also argues that construing the forum selection clause in the manner advanced by plaintiff "is unreasonable, inequitable, or oppressive, or would lead to an absurd result" because of the absence of a precise geographic location. Doc. #19 at 14. Defendant does not cite any Texas authority for this proposition. In fact, Texas law does not expressly require "that the parties limit their choice of forum to one political subdivision within a single larger political unit or that they specify a particular court within the selected jurisdiction." *Phoenix Network Techs.*

5

*(Europe) Ltd. v. Neon Sys., Inc.*, 177 S.W.3d 605, 619 (Tex. App. 2005). Accordingly, I conclude there is nothing absurd or unreasonable about a forum selection clause that operates as a consent to jurisdiction in all federal courts and that waives any challenge to venue in any suit brought therein.

In sum, the forum selection clause is unambiguous. It is an agreement that consents to jurisdiction in all federal courts (and Texas state courts) and waives any objection to venue or any argument that a case was brought in an inconvenient forum.

### *Enforceability of the Forum Selection Clause*

The Second Circuit has set forth the standard for a court to determine the enforceability of a forum selection clause. A court must initially examine "(1) whether the clause was reasonably communicated to the party resisting enforcement; (2) whether the clause is mandatory or permissive, *i.e.*, . . . whether the parties are required to bring any dispute to the designated forum or simply permitted to do so; and (3) whether the claims and parties involved in the suit are subject to the forum selection clause." *Martinez*, 740 F.3d at 217 (internal quotation marks and citations omitted). If the preceding factors have been satisfied, then the resisting party may overcome the resulting presumption of enforceability by "(4) making a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching." *Ibid.* In analyzing the second and third factors, a court should apply the law chosen by the parties to the contract, while applying federal law to the analysis of the first and fourth factors. *Id.* at 217–218.

Defendant has not contested the first three factors of the test for enforceability. Accordingly, I need only address whether enforcement of the forum selection clause would be altogether unreasonable or unjust.

Defendant argues that enforcement of the forum selection clause is unreasonable and unjust because the forum selection clause does not adequately restrict the forum to a particular geographic area. The Second Circuit has stated that it will refuse to enforce a forum selection clause "*only if* (1) its incorporation was the result of fraud or overreaching; (2) the law to be applied in the selected forum is fundamentally unfair; (3) enforcement contravenes a strong public policy of the forum in which suit is brought; or (4) trial in the selected forum will be so difficult and inconvenient that the plaintiff effectively will be deprived of his day in court." *Starkey v. G Adventures, Inc.*, 796 F.3d 193, 198 (2d Cir. 2015) (emphasis added; internal quotation marks omitted). Defendant does not argue that any of these factors requires me not to enforce the clause.

I acknowledge that some courts have declined to enforce forum selection clauses on the grounds of apparent geographic uncertainty. *See, e.g.*, *Conopco, Inc. v. PARS Ice Cream Co.*, 2013 WL 5549614, at *5 (S.D.N.Y. 2013); *BBC Chartering & Logistic GmbH & Co. K.G. v. Siemens Wind Power A/S*, 546 F. Supp. 2d 437, 442 (S.D. Tex. 2008). But there is no hard and fast rule as to the geographic precision of a forum selection clause. And I am not persuaded that a forum selection clause must specify a precise forum in a specific geographic location. This forum selection clause adequately restricts the forum to the federal courts of the United States and the state courts of Texas. The parties agreed to litigate disputes arising out of the Agreement only in courts that either generally apply Texas law or are very well-versed in the application of the law of other states. *See Excelsior Designs, Inc. v. Sheres*, 291 F. Supp. 2d 181, 187 (E.D.N.Y. 2003) ("federal courts are deemed capable of applying the law of other states").

The clause at issue in this case promotes efficiency and certainty. Plaintiff is a corporation headquartered in Florida, incorporated in Delaware, and with offices and activity

7

scattered across the country, whereas defendant, while in plaintiff's employ, was a peripatetic corporate officer traveling to at least 29 locations on plaintiff's behalf. *See* Doc. #19-1 at 3 (¶ 14). Given that, a dispute could arise with a set of witnesses and a locus of operative facts in any number of locations.

Here, plaintiff claims that at least some of the witnesses and some of defendant's alleged acts giving rise to this lawsuit occurred in Connecticut, and defendant does not dispute some degree of contact and business activity within the state. The forum selection clause at issue in this case dispenses with the need to litigate pleading-stage issues such as the quality and quantity of defendant's contacts with Connecticut, the substantiality of the acts or omissions in Connecticut giving rise to the claims, or the convenience of a trial in this state. Indeed, the interests of judicial economy are central to the presumption of enforceability of a forum selection clause. *See, e.g.*, *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 594 (1991) (noting that forum selection clauses "spar[e] litigants the time and expense of pretrial motions to determine the correct forum and conserving judicial resources that otherwise would be devoted to deciding those motions"). The forum selection clause at issue here serves those interests. Nor is this a case where a plaintiff has exploited a broad forum selection clause to file a lawsuit in some exotic locale that has no conceivable connection to the parties or their business activities.

It is also noteworthy that the clause was a part of an arm's-length employment agreement negotiated between a sophisticated corporation and its executive officer. Where a forum selection clause "was made in an arm's-length negotiation by experienced and sophisticated businessmen," this warrants "substantial deference" to the agreement of the parties. *Magi XXI, Inc. v. Stato della Citta del Vaticano*, 714 F.3d 714, 721 (2d Cir. 2013) (internal quotation marks omitted). This agreement was part of a larger transaction that included the acquisition of a core

processing platform from banks owned in whole or in part by defendant. *See* Doc. #1 at 2-3 (¶¶ 7, 12-14). In addition, defendant acknowledged that he fully read and understood the Agreement and had the opportunity to review the entirety of the Agreement with his attorney. Doc. #2 at 25 (¶ 28). It is clear that defendant appreciated the costs and benefits of bargaining for this forum selection clause when he entered into the Agreement. Moreover, defendant's consent to the forum selection clause forecloses his argument that the Court does not have personal jurisdiction. *See D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 103 (2d Cir. 2006)

All in all, I am not convinced that defendant has sustained his "heavy burden of showing that it would be unfair, unjust, or unreasonable to hold [him] to his bargain." *Martinez*, 740 F.3d at 219. The forum selection clause is enforceable. Having resolved the issue of the interpretation and enforceability of the forum selection clause, I will now turn to defendant's arguments regarding venue and transfer.

### *Improper Venue*

Defendant moves to dismiss pursuant to Rule 12(b)(3) on the ground of improper venue. Defendant contends that his waiver of venue is ineffective in light of the Supreme Court's decision in *Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S. Ct. 568 (2013). I do not agree.

The Supreme Court in *Atlantic Marine* confronted a venue challenge in the context of a defendant's challenge to a plaintiff's filing of a lawsuit in a forum other than the contractually pre-selected forum. Here, by contrast, the facts are opposite: they involve defendant's challenge to plaintiff's choice to honor the parties' agreement by filing in a contractually pre-selected forum. Accordingly, notwithstanding the Supreme Court's statement in *Atlantic Marine* that the propriety of venue must be measured by reference to the venue factors set forth by statute, *id.* at

577 (citing 28 U.S.C. § 1391(b)), the Supreme Court did not confront facts involving a selection of forum that was in accordance with the parties' forum selection clause and that was chosen pursuant to defendant's venue waiver.

In such cases, *Atlantic Marine* and the statutory venue factors are inapplicable in light of plaintiff's reliance on a defendant's venue waiver. *See, e.g.*, *BMO Harris Bank, N.A. v. McM, Inc.*, 2017 WL 3443238, at *3 (D. Minn. 2017); *Servpro Indus., Inc. v. JP Penn Restoration Servs.*, 2016 WL 5109947, at *2-3 (M.D. Tenn. 2016). To conclude otherwise would severely undermine the clearly articulated policy of the Supreme Court favoring enforcement of forum selection classes "[i]n all but the most unusual cases." *Atl. Marine Const. Co. Inc.*, 134 S. Ct. at 583.

Indeed, the concept of venue, "though defined by legislation relates to the convenience of litigants and as such is subject to their disposition." *Neirbo Co. v. Bethlehem Shipbuilding Corp.*, 308 U.S. 165, 168 (1939). The venue statute "merely accords to the defendant a personal privilege respecting the venue, or place of suit, which he may assert, or may waive, at his election." *Ibid.*; *see also Leroy v. Great W. United Corp.*, 443 U.S. 173, 180 (1979) (observing that personal jurisdiction and venue "are personal privileges of the defendant, rather than absolute strictures on the court, and both may be waived by the parties").

### *Motion to Transfer*

Defendant moves pursuant to 28 U.S.C. § 1404 to transfer this action to the Northern District of Texas on the ground that it is a more convenient forum for the litigation. It is within the discretion of the trial court whether to transfer a case pursuant to § 1404. *See New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 114 (2d Cir. 2010). In evaluating

a motion to transfer, the Second Circuit has concluded that a movant must show by clear and convincing evidence that transfer is appropriate. *Ibid.*

Generally speaking, a motion to transfer entails a two-step analytic process. First, the Court must determine whether a case could properly have been filed in the proposed transferee district. *Herbert Ltd. P'ship v. Elec. Arts Inc.*, 325 F. Supp. 2d 282, 285 (S.D.N.Y. 2004). If so, the Court then analyzes a number of so-called private interest and public interest factors articulated by the Supreme Court.

> Factors relating to the parties private interests include relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. Public-interest factors may include the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law. The Court must also give some weight to the plaintiffs' choice of forum.

*Atl. Marine Const. Co. Inc.*, 134 S. Ct. at 581 n.6 (citations and internal quotation marks omitted).

"The calculus changes, however, when the parties' contract contains a valid forum-selection clause." *Id.* at 581. The forum selection clause is to be accorded "controlling weight" in determining whether to transfer venue. *Id.* at 579. To that end, transfer of venue is proper only in "exceptional cases" where the public-interest factors counsel in favor of litigating the matter in the proposed venue. *Ibid.*; *ICICI Bank Ltd. v. Essar Glob. Fund Ltd.*, 565 B.R. 241, 253-54 (S.D.N.Y. 2017).

I conclude that the public interest factors do not support transfer to the Northern District of Texas. First, defendant concedes that the court-congestion factor does not support transfer given the fact that there are fewer cases per judge in the District of Connecticut than in the

11

Northern District of Texas. Doc. #19 at 19 & n.4. Next, this action is not a controversy that is particularly "localized" in Texas. Plaintiff is a corporation headquartered in Florida with operations in various parts of the country, including Connecticut. Defendant agreed to spend up to 40% of his work time outside of Texas to perform his duties under the contract. Doc. #2 at 4. Additionally, given that this action is principally a contract dispute, "the issues in this Complaint do not raise localized concerns." *RGJP Enterprises, LLC v. Lele Franchising, LLC*, 2015 WL 3440347, at *2 (D. Conn. 2015). Finally, the Agreement provides that Texas law applies and the Northern District of Texas is indeed at home with the law chosen by the parties. Nevertheless, given that the first two public interest factors do not strongly support transfer, the choice-of-law clause selecting Texas law does not sufficiently tip the scales to make this an "exceptional" case warranting transfer on the basis of the public interest factors. Accordingly, I will deny defendant's motion to transfer under § 1404.

### *First-Filed Rule*

Finally, defendant moves to transfer this case to the Northern District of Texas under the "first-filed rule." But this is an odd argument to make, because defendant concedes that this action was filed prior to defendant's filing of the parallel action in Texas state court. Doc. #19 at 21. Defendant cites the "balance of convenience" exception to the "first-filed rule." In determining whether to yield to a second-filed action under this exception, "the factors relevant to the balance of convenience analysis are essentially the same as those considered in connection with motions to transfer venue pursuant to 28 U.S.C. § 1404(a)." *Employers Ins. of Wausau v. Fox Entm't Grp., Inc.*, 522 F.3d 271, 275 (2d Cir. 2008). I have already looked at those factors and conclude that the balance of convenience exception does not apply.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss this case pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(3) is DENIED. Defendant's motion to transfer this case to the Northern District of Texas pursuant to 28 U.S.C. § 1404 or an exception to the "first-filed rule" is DENIED.

It is so ordered.

Dated at New Haven this 5th day of February 2018.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge