# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

NYMBUS, INC.,                                   :      CIVIL NO. 3:17-CV-01113 (JAM)
                                                :
      Plaintiff/Counter-Defendant       :
                                                :
v.                                              :
                                                :
SCOTT SHARP,                                    :
                                                :
      Defendant/Counterclaimant         :
-------------------------------------------     :   --------------------------------------------
SCOTT SHARP,                                    :
                                                :
      Third-party Plaintiff             :
                                                :
v.                                              :
                                                :
NYMBUS, INC., SCOTT KILLOH,                     :
HARRY FLOOD,                                    :
                                                :
      Third-party Defendants            :      AUGUST 22, 2018


## MEMORANDUM OF LAW IN SUPPORT OF
## THE MOTION OF NYMBUS, INC., SCOTT KILLOH AND
## HARRY FLOOD FOR PARTIAL JUDGMENT ON THE PLEADINGS


**Fox Rothschild LLP**

Scott L. Vernick
2000 Market Street, 20th Floor
Philadelphia, PA 19103
Tel: (215)-299-2150

John A. Wait
Alexandra L. Sobol
101 Park Avenue, 17th Floor
New York, NY 10018
Tel: (212) 878-7900

*Attorneys for Nymbus, Inc.,*
*Scott Killoh, and Harry Flood*

**Robinson & Cole, LLP**

John H. Kane
Kathleen Elizabeth Dion
280 Trumbull St.
Hartford, CT 06103
Tel: (860)-275-8231

*Attorneys for Nymbus, Inc.,*
*Scott Killoh, and Harry Flood*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS ...................................................................................... 2

STANDARD OF REVIEW ...................................................................................... 5

ARGUMENT ............................................................................................................. 7

I.      The Court Should Dismiss Sharp's Purported Counterclaims for Statutory Fraud and
        Common Law Fraud Because Sharp Has Not Established Any Basis to Apply Texas
        Tort Law in These Proceedings. ........................................................................ 7

II.     The Court Should Dismiss Sharp's Counterclaims for Statutory Fraud and Common
        Law Fraud Because They Are Duplicative of His Counterclaims for Breach of
        Contract. ............................................................................................................. 9

        A.      The Source of the Parties' Duties Demonstrates that Sharp's Purported
                Claims for Fraud Actually Arise in Contract, Not Tort. ........................ 9

        B.      The Nature of Sharp's Alleged Injury and Requested Remedy Demonstrate
                that Sharp's Counterclaims for Fraud Actually Arise in Contract, Not Tort. ....... 12

        C.      Sharp's Purported Claims for Fraudulent Non-Disclosure and Fraudulent
                Inducement Fail as a Matter of Law. ..................................................... 15

                1.      Alleged Fraudulent Non-Disclosure ......................................... 15

                2.      Alleged Fraudulent Inducement ................................................ 16

III.    Sharp Cannot Recover Exemplary Damages. .................................................. 17

CONCLUSION ....................................................................................................... 18

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Allstate Ins. Co. v. Receivable Fin. Co.*,
    501 F.3d 398 (5th Cir. 2007) ...............................................................................16

*Amoco Prod. Co. v. Alexander*,
    622 S.W.2d 563 (Tex. 1981)................................................................................19

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..............................................................................................9

*Bellefonte Underwriters Ins. Co. v. Brown*,
    704 S.W.2d 742 (Tex. 1986)................................................................................19

*Bradford v. Vento*,
    48 S.W.3d 749 (Tex. 2001)..................................................................................17

*Cantor Fitzgerald Inc. v. Lutnick*,
    313 F.3d 704 (2d Cir. 2002)..................................................................................9

*Cent. Sav. & Loan Ass'n v. Stemmons Nw. Bank, N.A.*,
    848 S.W.2d 232 (Tex. App. 1992).......................................................................15

*City of Clinton, Ark. v. Pilgrim's Pride Corp.*,
    653 F. Supp. 2d 669 (N.D. Tex. 2009) ................................................................18

*City Prod. Corp. v. Berman*,
    610 S.W.2d 446 (Tex. 1980)................................................................................19

*DeMuria v. Hawkes*,
    328 F.3d 704 (2d Cir. 2003)..................................................................................8

*In re Enron Corp. Sec., Derivative & "ERISA" Litig.*,
    388 F. Supp. 2d 780 (S.D. Tex. 2005) ............................................................17, 18

*Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*,
    51 S.W.3d 573 (Tex. 2001)..................................................................................16

*Farah v. Mafrige & Kormanik, P. C.*,
    927 S.W.2d 663 (Tex. App. 1996)...............................................................12, 13, 14

*Formosa Plastics Corp. USA v. Presidio Eng'rs and Contractors, Inc.*,
    960 S.W.2d 41 (Tex. 1998).........................................................................11, 12, 14

ii

*GMAC Commercial Mortg. Corp. v. East Texas Holdings, Inc.*,
    441 F.Supp.2d 801 (E.D. Tex. 2006) ......................................................................19

*Haase v. Glazner*,
    62 S.W.3d 795 (Tex. 2001) ......................................................................................18

*Int'l Printing Pressmen and Ass't Union v. Smith*,
    198 S.W.2d 729 (Tex. 1946) ..............................................................................11, 12

*Jaiguay v. Vasquez*,
    287 Conn. 323, 948 A.2d 955 (Conn. 2008) ............................................................9

*Jim Walter Homes, Inc. v. Reed*,
    711 S.W.2d 617 (Tex. 1986) ........................................................................11, 14, 19

*Kevin M. Ehringer Enter., Inc. v. McData Serv. Corp.*,
    646 F.3d 321 (5th Cir. 2011) .............................................................................16, 18

*Luna v. N. Star Dodge Sales, Inc.*,
    667 S.W.2d 115 (Tex. 1984) ....................................................................................19

*Mid- Continent Aircraft Corp. v. Curry County Spraying Serv.*,
    572 S.W.2d 308 (Tex. 1978) ....................................................................................14

*Miller v. Raytheon Aircraft Co.*,
    229 S.W.3d 358 (Tex. App. 2007) ...........................................................................17

*Miller v. Wolpoff & Abramson, L.L.P.*,
    321 F.3d 292 (2d Cir. 2003) .................................................................................4, 8

*Nobility Homes of Texas, Inc. v. Shivers*,
    557 S. W.2d 77 (Tex. 1977) .....................................................................................15

*Patel v. Contemporary Classics of Beverly Hills*,
    259 F.3d 123 (2d Cir. 2001) .....................................................................................4

*Ralston Purina Co. v. McKendrick*,
    850 S.W.2d 629 (Tex. App. 1993) ...........................................................................18

*Rowntree v. Rice*,
    426 S.W.2d 890 (Tex. App. 1968) ...........................................................................16

*Schindler v. Austwell Farmers Coop.*,
    829 S.W.2d 283 (Tex. App. 1992) ...........................................................................15

*Sellers v. M.C. Floor Crafters, Inc.*,
    842 F.2d 639 (2d Cir. 1988) .....................................................................................8

*Siragusa v. Arnold*,
No. 3:12-CV-04497-M, 2013 WL 5462286 (N.D. Tex. Sept. 16, 2013) ...............................18

*Sw. Bell Tel. Co. v. DeLanney*,
809 S.W.2d 493 (Tex. 1991) .......................................................................................11, 12, 14

*Turner v. Boyle*,
116 F. Supp. 3d 58 (D. Conn. 2015) ............................................................................................9

*W. Dermatology Consultants, P.C. v. VitalWorks, Inc.*,
322 Conn. 541, 153 A.3d 574 (2016) ..........................................................................................9

**Other Authorities**

Federal Rule of Civil Procedure 12 ............................................................................3, 4, 7, 8, 20

Restatement (Second) of Conflict of Laws § 6 ...........................................................................9

Restatement (Second) of Conflict of Laws § 145 .......................................................................9

W. Keeton, D. Dobbs, R. Keeton & D. Owen, PROSSER AND KEETON ON THE LAW
OF TORTS § 92 (5th Ed. 1984) ...............................................................................11, 12, 14

## <u>PRELIMINARY STATEMENT</u>

As provided for in Federal Rule of Civil Procedure 12(c), Plaintiff/Counterclaim Defendant Nymbus, Inc. ("Nymbus") and Third Party Defendants Scott Killoh ("Killoh") and Harry Flood ("Flood") (collectively, "Counterclaim Defendants") submit this Memorandum of Law in Support of their Motion for Partial Judgment on the Pleadings ("Motion") as to the counterclaims and third party claims filed by Defendant/Counterclaim Plaintiff Scott Sharp ("Plaintiff" or "Sharp") for statutory fraud, common law fraud, fraudulent non-disclosure, and fraudulent inducement.

The Court should dismiss Counterclaims II (statutory fraud), III (common law fraud), VII (statutory fraud), VIII (common law fraud) and XII (common law fraud, fraudulent nondisclosure and fraudulent inducement) because Sharp asserts these purported claims under Texas statutory and common law, and seeks damages under various provisions of the Texas Code.  But Sharp has not alleged any basis for holding the Counterclaim Defendants liable to him in tort under Texas law.  The few allegations Sharp makes in support of these claims center on promises allegedly made to him in Mystic, Connecticut – by residents of Delaware, Florida, and Massachusetts – concerning future events in Mystic.  Sharp has not alleged that any purported tortious conduct occurred in Texas and, in his Answer, Sharp maintains that if venue has to be established over Killoh and Flood "a substantial portion of the events and omissions occurred in this District."  Because there is no basis for asserting tort claims under Texas law the Court should dismiss these claims with prejudice.

If it applies Texas law to these alleged tort claims, then the Court should still dismiss them under Texas' gist of the action doctrine because the underlying factual allegations make clear the claims sound in contract – not tort.

## STATEMENT OF FACTS

The facts set forth herein are based upon the allegations in Sharp's Amended Answer, Affirmative Defenses, Counterclaims and Third-Party Claims ("Answer").[1]  *See* Answer [D.E. 51].  On or about December 31, 2015, Sharp entered into an employment agreement (the "Agreement") with Nymbus.  *See id.* at ¶ 65 and Ex. A.  Texas law governs the Agreement.  *Id* at ¶ 66 and Ex. A (Section 15(a)).  As provided for in the Agreement, Nymbus was to pay Sharp a salary of $250,000 per year.  *Id.* at ¶ 112.  In July 2016, Sharp alleges that the parties agreed to amend the Agreement in two ways.  *Id.* at ¶ 113.  First, Nymbus increased Sharp's salary to $300,000.  *Id.*  Second, Nymbus was to provide Sharp with stock in lieu of salary.  *Id.*  Sharp alleges that the parties made this amendment in Mystic, Connecticut.  *Id.* at ¶ 78.

Sharp asserts three counterclaims for breach of contract, two counterclaims for statutory fraud, and three counterclaims for common law fraud, all based on the same factual allegations. In Counterclaim I, Sharp alleges breach of contract because Nymbus did not pay Sharp his increased salary or provide him with stock in lieu of salary for at least three months in 2016.  *See* Answer at ¶¶ 111-118.  Sharp alleges damages in an amount equal to "the difference between the contractual base salary, as amended, and the amount Nymbus paid Sharp in 2016."  *Id.* at ¶ 116. Sharp also seeks to recover attorney's fees under Texas law.  *Id.* at ¶ 118.

In Counterclaim II (statutory fraud) and Counterclaim III (common law fraud), Sharp recites the same allegations that Nymbus breached the Agreement (as amended) by not paying him his increased salary or providing him with stock.  *See id.* at ¶ 121.  In Counterclaims II and III, the only additional allegations put forth by Sharp are that, in July 2016, Scott Killoh (a

---

[1] For purposes of this Motion *only*, Nymbus accepts as true all factual allegations set forth in Sharp's Answer.  *See Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003) (quoting *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001)) ("On a motion to dismiss or for judgment on the pleadings we 'must accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor.'").

resident of Florida) and Harry Flood (a resident of Massachusetts) promised to secure board approval to pay Sharp stock in lieu of salary but never obtained such approval. *Id.* at ¶¶ 107, 108, 122, 125. This promise was made in Mystic, Connecticut, concerning a board meeting that was to occur "immediately." *Id.* at ¶ 122.

On the basis of these additional allegations, Sharp goes on to assert that "Nymbus' answer and actions indicate that Nymbus (through officers such as Killoh, Soli, and Flood) never intended to provide stock to Sharp and was actually aware that its promises to Sharp were false." *Id.* at ¶ 127.

Counterclaim VI is for breach of contract arising from a purported stock sale. Sharp alleges that, in October 2016, "Sharp and Nymbus agreed that Sharp would again receive monthly monetary compensation for a three-month period, and that Sharp would invest $75,000 to alleviate cash-flow concerns regarding such payments." *See* Answer at ¶ 166. He contends the agreement was confirmed in an email from Harry Flood. *Id.* at ¶ 167.

Sharp goes on to allege that he invested $75,000 in Nymbus, Nymbus did not deliver any stock to him and that, as such, he suffered "the loss and loss of use of $75,000 paid for stock that was never provided." *Id.* at ¶ 171.

In Counterclaim VII (statutory fraud) and Counterclaim VIII (common law fraud), Sharp again recites his allegations that Nymbus breached the Agreement (as amended) by failing to deliver stock to him in exchange for $75,000. *See id.* at ¶¶ 176, 180, 189, 193. He contends again that this agreement was confirmed in an email from Harry Flood. *Id.* at ¶¶ 177, 190. But in Counterclaims VII and VII Sharp also refers to this alleged breach as a "false promise." *Id.* at ¶¶ 175, 179, 192. Sharp does not state where this "false promise" occurred or how, if at all, it differs from the alleged agreement by Nymbus to deliver stock in exchange for $75,000.

The only difference between these fraud claims and his corresponding claim for breach of contract is Sharp's additional allegation that "in an answer filed [by Nymbus] in the Northern District of Texas, and an answer filed in this action, Nymbus denied having reached an agreement to provide Sharp with stock, despite having accepted his payment of $75,000." *See id.* at ¶¶ 181, 194.  Sharp then alleges that "Nymbus' answer and actions indicate that Nymbus (through officers such as Killoh, Soli, and Flood) never intended to provide stock to Sharp and was actually aware that its promises to Sharp were false." *See* Answer at ¶¶ 182, 195.

In Counterclaim XI, Sharp alleges a breach of contract based upon his purported termination of the Agreement for Good Reason.  The Agreement permits Sharp to "terminate for Good Reason, defined as a material breach by Nymbus or 'a material, adverse change in Executive's authority, duties or responsibilities.'" *See id.* at ¶ 216.  Sharp alleges that Nymbus materially breached the Agreement by failing to provide him with an annual bonus plan or minimum bonus.  *Id.* at ¶ 217.  Moreover, on or about April 12, 2017, Sharp was placed on administrative leave by Nymbus, thereby creating a "material, adverse change" and warranting Sharp's termination for "Good Reason."  *Id.* at ¶¶ 218, 219.  On or about May 26, 2017, Sharp's attorney "informed Nymbus that it was in breach of the employment agreement, based on the lack of bonus and change in authority." *Id.* at ¶ 220.  Sharp received no reply from Nymbus.  *Id.* at ¶ 221.  Thus, according to Sharp, Nymbus was required to pay him additional compensation under the Agreement ($300,000 in continued base salary) in addition to the difference between the price for COBRA insurance and what Sharp would have paid for insurance had he still been employed by Nymbus.  *Id.* at ¶ 222.

On or about June 16, 2017, Sharp provided Nymbus with a Notice of Termination of Employment with Good Reason, indicating that he expected to receive his continued base salary

plus COBRA payments.  *See id.* at ¶ 223.  On or about July 5, 2017, Nymbus sent Sharp a Notice of Termination for Cause, informing him that Nymbus did not believe that Sharp's duties had ever been materially or adversely changed and stating that it would not provide him with additional salary or benefits.  *Id.* at ¶ 224.  Thus, according to Sharp, Nymbus' breach caused injury to Sharp in the amount of $300,000 in continued salary for the year following his termination and the difference between the amount Sharp must pay for COBRA health insurance and the amount he would have paid had he been employed by Nymbus.  *Id.* at ¶ 226.

In Counterclaim XII (common law fraud),[2] Sharp again recounts his claim for breach of contract arising from Nymbus' alleged failure to provide him with additional salary or benefits as set forth in his Notice of Termination for Good Reason.  Again, Sharp's only evidence of "fraud" is that "Nymbus never intended to follow through on any of its promises to provide stock to Sharp, as indicated by the absence of any board approval of stock to Sharp."  *Id.* at ¶ 232.

In Counterclaim XII, Sharp purports to allege two additional claims: (1) a claim for fraudulent non-disclosure, and a (2) claim for fraudulent inducement.  Though it is unclear which allegations go with which claim (because he asserts three separate causes of action in Counterclaim XII), Sharp's claims for fraudulent non-disclosure and fraudulent inducement again merely recite his claim for breach of contract arising from his purported Termination for Good Reason.

## STANDARD OF REVIEW

The Federal Rules of Civil Procedure permit a party to move for judgment on the pleadings after the pleadings are closed.  *See* Fed. R. Civ. P. 12(c).  Nymbus filed its Complaint

---

[2] Unlike the preceding two pairs of counterclaims for breach of contract and fraud, respectively, Sharp does not assert a third claim for statutory fraud, but instead only a purported claim for common law fraud with respect to his claim for breach of contract stemming from his termination for Good Reason.

against Sharp on July 5, 2017 [D.E. 1], Sharp filed his Answer with Affirmative Defenses and Counterclaims against Nymbus on February 20, 2018 [D.E. 34], and Nymbus filed its Answer to Sharp's Counterclaims on March 13, 2018 [D.E. 35].  Nymbus filed an Amended Answer to Sharp's Counterclaims on May 30, 2018 [D.E. 41].

Nymbus filed a motion for partial judgment on the pleadings with a supporting memorandum of law (the "MJOP") on May 31, 2018.  [D.E. 42, 43].   Sharp filed a motion for joinder and amendment with a supporting memorandum of law on June 18, 2018.  [D.E. 46, 47]. Sharp filed a memorandum of law in opposition to the MJOP on June 21, 2018.  [D.E. 48].

The parties filed a Joint Motion to withdraw the MJOP and permit Sharp to file an Amended Answer, Affirmative Defenses, Counterclaims and Third Party Claims on July 3, 2018. [D.E. 49].  On July 5, 2018 the Court issued an Order granting the Joint Motion.  [D.E. 50].

Sharp filed an Amended Answer, Affirmative Defenses, Counterclaims and Third Party Claims on July 6, 2018 [D.E. 51].  Nymbus, Killoh and Flood filed an Answer With Affirmative Defenses to Amended Counterclaims on August 3, 2018 [D.E. 52].   The pleadings are therefore closed.

"The legal standards for review of motions pursuant to Rule 12(b)(6) and Rule 12(c) are indistinguishable."  *DeMuria v. Hawkes*, 328 F.3d 704, 706 n. 1 (2d Cir. 2003).  "Judgment on the pleadings is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings." *Sellers v. M.C. Floor Crafters, Inc*., 842 F.2d 639, 642 (2d Cir. 1988).  On a motion for judgment on the pleadings, the Court should accept all factual allegations in the non-moving party's pleading as true and draw all inferences in the non-moving party's favor. *See Miller v. Wolpoff & Abramson, L.L.P*., 321 F.3d 292, 300 (2d Cir. 2003).  Importantly, a claim is plausible on its face if the complaint

6

alleges enough facts to "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Thus, "a plaintiff armed with nothing more than conclusions" cannot "unlock the doors of discovery." *Id.* at 678-79.  Additionally, "[t]hreadbare recitals of the elements of a cause of action supported by mere conclusory statements, do not suffice." *Id.* at 678.

## ARGUMENT

I. **The Court Should Dismiss Sharp's Purported Counterclaims for Statutory Fraud and Common Law Fraud Because Sharp Has Not Established Any Basis to Apply Texas Tort Law in These Proceedings.**

To assess whether Sharp can bring tort claims under Texas law against the Counterclaim Defendants, this Court should look to the choice-of law rules of Connecticut.  *See Cantor Fitzgerald Inc. v. Lutnick*, 313 F.3d 704, 710 (2d Cir. 2002) (federal district court looks to the state in which it sits to resolve conflict of law questions).  Under Connecticut law, the proper test to apply in tort actions to determine which state's law applies is the "most significant relationship" test.  *See W. Dermatology Consultants, P.C. v. VitalWorks, Inc.*, 322 Conn. 541, 552, 153 A.3d 574, 581, fn. 9 (2016) ("[W]e take this opportunity to reiterate that the most significant relationship test outlined in §§ 6 (2) and 145 of the Restatement (Second) of Conflict of Laws is the proper test to apply in tort actions to determine which state's law applies."); *see also Turner v. Boyle*, 116 F. Supp. 3d 58, 75 (D. Conn. 2015).

The most significant relationship test evaluates the following factors according to their relative importance with respect to the particular issue:  (a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered."  *Jaiguay v. Vasquez*, 287 Conn. 323,

352, 948 A.2d 955, 974 (Conn. 2008) (citing sections 6 and 145 of the Restatement (Second) of Conflict of Laws).

Here, Sharp alleges that, in July 2016, Killoh (a resident of Florida) and Flood (a resident of Massachusetts) made a promise, in Mystic, Connecticut, to secure board approval to pay Sharp stock in lieu of salary but never secured such approval. *See* Answer at ¶¶ 107, 108, 122, 125. Applying the "most significant relationship" test to these allegations, the Court should conclude that Sharp cannot maintain tort claims under Texas law. *First*, the place of the injury as alleged by Sharp is Connecticut. *Second*, the place where the conduct causing the injury occurred as alleged by Sharp is Connecticut. *Third*, Nymbus is a Delaware corporation with primary places of business in Connecticut and Florida, Killoh is a resident of Florida, Flood is a resident of Massachusetts, and only Sharp is a resident of Texas. *Fourth*, Sharp has not alleged that Nymbus, Killoh or Flood made promises to Sharp in Texas or primarily worked in Texas; only Sharp worked in Texas. As such, the Court should readily conclude that there is no basis for Sharp to assert Texas tort claims in these proceedings.

For these reasons, the Court should dismiss Counterclaims II (statutory fraud) and VII (statutory fraud) because Sharp asserts them under the Texas Business & Commercial Code and Sharp seeks damages under both the Texas Business & Commercial Code and the Texas Civil Practices and Remedies Code. Similarly, the Court should dismiss Counterclaims III (common law fraud), VIII (common law fraud) and XII (common law fraud, fraudulent nondisclosure and fraudulent inducement) because Sharp also asserts them under Texas common law and Sharp seeks damages for these alleged claims under the Texas Civil Practices and Remedies Code.

II.     **The Court Should Dismiss Sharp's Counterclaims for Statutory Fraud and Common Law Fraud Because They Are Duplicative of His Counterclaims for Breach of Contract.**

If it concludes that Sharp can allege tort claims under Texas law, then the Court should still dismiss Sharp's counterclaims for statutory fraud and common law fraud because he has simply recast his purported claims for breach of contract as purported tort claims. To determine whether an alleged claim is one that sounds in contract or tort, Texas courts look to the substance of the cause of action, not the way the plaintiff pleads it. *See Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986) (citing *Int'l Printing Pressmen and Ass't Union v. Smith*, 198 S.W.2d 729, 735 (Tex. 1946)). The Texas Supreme Court has determined whether an action sounds in tort or contract from two perspectives: (i) the source of the parties' duties, and (ii) the nature of the plaintiff's injury or remedy. *See Formosa Plastics Corp. USA v. Presidio Eng'rs and Contractors, Inc.*, 960 S.W.2d 41, 45 (Tex. 1998); *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991).

Here, the source of the parties' duties and the nature of Sharp's alleged injury and remedy all demonstrate that Sharp's purported claims for fraud arise in contract, not tort.

A.     **The Source of the Parties' Duties Demonstrates that Sharp's Purported Claims for Fraud Actually Arise in Contract, Not Tort.**

As to determining whether an action sounds in contract or tort, the Texas Supreme Court directs courts to analyze the source of the legal duty at issue. *See Formosa Plastics*, 960 S. W.2d at 45. The law imposes tort obligations so to avoid injury to others – "apart from and independent of promises made [in a contract] and therefore apart from the manifested intention of the parties." *DeLanney*, 809 S.W.2d at 494 (quoting W. Keeton, D. Dobbs, R. Keeton & D. Owen, PROSSER AND KEETON ON THE LAW OF TORTS § 92 at 655 (5th Ed. 1984) (hereinafter, PROSSER AND KEETON). As such, if a defendant's conduct may give rise to liability independent

of the contract that exists between the parties, then a plaintiff's claim may sound in tort.  But, if defendant's conduct may give rise to liability only because it breaches the parties' contract, then a plaintiff's claim ordinarily sounds only in contract.  *See DeLanney*, 809 S.W.2d at 494.  Thus, "an action in contract is for the breach of a duty arising out of a contract either express or implied, while an action in tort is for a breach of duty imposed by law."  *See Formosa Plastics*, 960 S.W.2d at 45 (quoting *Int'l Printing Pressmen*, 198 S.W.2d at 735).

In *DeLanney*, plaintiff contracted with the defendant, Southwestern Bell Telephone Company ("Bell"), for a Yellow Pages ad, but Bell failed to publish the ad.  *See DeLanney,* 809 S.W.2d at 493.  The plaintiff sued Bell alleging, in part, negligence.  *See id.*  The trial court rendered judgment for the plaintiff, and the appellate court affirmed.  The Texas Supreme Court held, however, that plaintiff's claims sounded in contract and not tort because Bell's duty to publish the ad arose solely from the contract between the parties.  *See id.* at 494-95.  The *DeLanney* court reasoned that there is no liability in tort for nonfeasance – that is, for failing to do what one has promised to do in the absence of a duty to act apart from the promise made.  *See id.* at 495 n. 2 (citing PROSSER AND KEETON at 656-67).  Accordingly, Bell's failure to publish the ad was not properly classified as a tort.  *See id.* at 495.

Similarly, in *Farah v. Mafrige & Kormanik, P. C*., 927 S.W.2d 663 (Tex. App. 1996), plaintiff, a home builder, sued for legal malpractice in the prosecution of numerous claims against banks that had financed his construction business.  The appellate court held that plaintiff's claims for negligence and fraud, which plaintiff alleged should have been asserted against the banks, were contractual in nature and, as such, plaintiff could not, and should not have recovered in tort on those claims.  *Id.* at 675.  The builder based his claims for negligence and fraud on the banks' breach of their promise to finance his construction business in exchange

for the builder's promise to deposit money with them. *Id.* at 674.   As such, the builder's purported claims were contractual in nature because they alleged a breach of duty imposed by an agreement rather than by operation of law. *Id.*

Likewise, here, the source of the parties' duties relating to any alleged fraud is the Agreement and any purported amendments to the Agreement.[3]   Under the Agreement, in part, Nymbus' had an obligation  to compensate Sharp with "an annual rate of base salary of no less than [$250,000.00] subject to applicable deductions and withholdings in periodic installments in accordance with [Nymbus'] customary payroll practices, but no less frequently than monthly." *See id.* at D.E. 2, ¶ 4.1.  Similarly, under the Agreement, in part, Sharp has an obligation to serve as the Chief Operating Officer and "devote substantially all of his business time and attention to the performance of" his duties as such. *See id.* at D.E. 2, ¶¶ 2.1, 2.2.

In Counterclaims II (statutory fraud) and III (common law fraud), Sharp alleges that the parties amended the Agreement by providing Sharp with stock in lieu of cash compensation. *See* Answer at ¶¶ 121, 122, 135, 136.  Sharp asserts that Nymbus failed to provide Sharp with stock even though he continued to "perform his duties for Nymbus" as required under the Agreement. *Id.* at ¶ ¶ 123, 137.

In Counterclaims VII (statutory fraud) and VIII (common law fraud), Sharp again alleges that the parties amended the Agreement to provide him with compensation for three months in October 2016 in exchange for Sharp providing Nymbus with $75,000 to alleviate cash-flow problem. *Id.* at ¶¶ 176, 189.  In reliance on the promise that he would receive a total of $150,000 in stock for 2016, Sharp alleges that he delivered $75,000 to Nymbus. *Id.* at ¶¶ 177, 178, 190,

---

[3] Notably, the Agreement itself provides that "[n]o provision of this Agreement may be amended or modified *unless such amendment or modification is agreed to in writing and signed by the Executive and by the Board of the Company.*" *See* Agreement at D.E. 2, ¶ 17 (emphasis added).  In his Answer, Sharp does not allege that the parties followed these steps when they purportedly amended the Agreement.  For purposes of this Motion only, however, Nymbus will assume that the parties properly amended the Agreement.

191. Nymbus allegedly breached the parties' amended Agreement by not delivering stock to Sharp. *Id.* at ¶¶ 180, 193.

Last, in Counterclaim XII (common law fraud), Sharp alleges that Nymbus failed to provide him with post-termination compensation of salary and insurance as provided for in the Agreement if he terminated his employment with Good-Reason. *Id.* at ¶¶ 230, 237.

As *DeLanney* and *Farah* made clear, there cannot be any liability in tort for failing to do what one has promised to do in a contract in the absence of a duty to act separate and apart from the promise made. *See DeLanney,* 809 S.W.2d at 495 (citing PROSSER AND KEETON at 656-67); *Farah*, 927 S.W.2d at 674 ("Regardless of the damages sought, we conclude Farah's fraud and negligent misrepresentation causes of action in the underlying suit were based upon the breach of a promise and therefore contractual in nature.")

Here, all of the allegations that make up Sharp's purported counterclaims for statutory fraud and common law fraud arise directly from an alleged breach of the Agreement (as amended). As such, the Court should dismiss these counterclaims for fraud because the source of the parties' alleged duties is contractual and not imposed by operation of law, leaving them to sound if at all in contract, not tort.

**B.      The Nature of Sharp's Alleged Injury and Requested Remedy Demonstrate that Sharp's Counterclaims for Fraud Actually Arise in Contract, Not Tort.**

In determining whether an action sounds in tort or contract, the Texas Supreme Court has analyzed the nature of the plaintiff's alleged injury or potential remedy. *See Formosa Plastics*, 960 S.W.2d at 45. "The nature of the injury most often determines which duty or duties are breached." *DeLanney*, 809 S.W.2d at 494 (quoting *Jim Walter Homes*, 711 S.W.2d at 618). "In determining whether the plaintiff may recover on a tort theory, it is also instructive to examine the nature of the plaintiff's loss." *Id*. When the only loss or damage is to the subject matter of

the contract, the action sounds in contract, not tort.  *See id.* (citations omitted); *see also Jim Walter Homes*, 711 S.W.2d at 618 (citing *Mid- Continent Aircraft Corp. v. Curry County Spraying Serv.*, 572 S.W.2d 308, 312 (Tex. 1978)); *Nobility Homes of Texas, Inc. v. Shivers*, 557 S. W.2d 77 (Tex. 1977) ("When the injury is only the economic loss to the subject of a contract itself, the action sounds in contract alone.").  Further, for a claim of fraud to survive, a plaintiff must allege and prove distinct actual damages attributable to the fraud and not attributable to the alleged breach of contract.  *See Cent. Sav. & Loan Ass'n v. Stemmons Nw. Bank, N.A.*, 848 S.W.2d 232, 240-41 (Tex. App. 1992) (citing *Schindler v. Austwell Farmers Coop.*, 829 S.W.2d 283, 290 (Tex. App. 1992)).

Sharp's only alleged injury is the financial loss arising from a purported breach of the Agreement itself or its amendments – namely, the stock he was promised in lieu of salary, the stock he was promised in exchange for $75,000, and the post-termination compensation of salary and health insurance tied to terminating his employment for his Good-Reason.  *See* Answer at ¶ 124, Counterclaim II ("Nymbus never delivered the stock and Sharp has suffered a loss because of this."); ¶ 138, Counterclaim III ("Nymbus never delivered the stock and Sharp has suffered a loss because of this."); ¶ 180, Counterclaim VII ("Nymbus never delivered the stock and Sharp has suffered a loss because of this."); ¶ 193, Counterclaim VIII ("Nymbus never delivered the stock and Sharp has suffered a loss because of this."); ¶ 237, Counterclaim XII ("Nymbus should nevertheless be liable for such post-termination compensation . . . .").  Sharp does not allege any damages that are distinct to any purported fraud rather than to a breach of the Agreement.  As such, the nature of Sharp's alleged injury and remedy – whether stock he was promised in lieu of salary, stock he was promised in exchange for $75,000, or post-termination compensation of

salary and health insurance – demonstrate that Sharp's purported claims for fraud actually sound in contract, not in tort.

For these reasons, the Court should dismiss with prejudice Sharp's counterclaims for statutory fraud and common law fraud.  If at all, his allegations about Nymbus' purported conduct only give rise to liability stemming from Nymbus' alleged breaches of the Agreement (as amended).  *See Kevin M. Ehringer Enter., Inc. v. McData Serv. Corp.,* 646 F.3d 321, 325 (5th Cir. 2011) (holding that a "mere failure to perform contractual obligations as promised does not constitute fraud but is instead a breach of contract.").

Lastly, Sharp fails to allege detrimental reliance, an essential element of statutory and common law fraud (Counterclaims II (statutory fraud) and III (common law fraud)).  *See Allstate Ins. Co. v. Receivable Fin. Co.*, 501 F.3d 398, 406 (5th Cir. 2007) ("The record must reflect that [plaintiffs] pleaded and proved that [they] actually relied on [defendant's] misrepresentation."); *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co*., 51 S.W.3d 573, 577 (Tex. 2001) (noting that to prevail on a fraud claim, the plaintiff "must prove that  . . . [it] actually and justifiably relied upon the representation"); *Rowntree v. Rice*, 426 S.W.2d 890, 893 (Tex. App. 1968) ("[P]laintiff in a fraud suit must plead and prove on the merits that he was ignorant of the falsity of defendant's representations and in fact relied on same . . . .").  A lack of sufficient evidence showing reliance will necessarily be fatal to the fraud claim.  *See Allstate*, 501 F.3d at 406. Further, absent evidence showing reliance, it is not the defendant's burden to disprove reliance. *Id*.

Here, in Counterclaims II and III, respectively, Sharp alleges that in reliance on a promise that Nymbus would pay him stock in lieu of salary, "Sharp continued to perform his duties for Nymbus."  *See* Answer at ¶¶ 123, 137.  This allegation does not amount to detrimental reliance

14

because it is nothing more than Sharp continuing to perform existing obligations under his Agreement with Nymbus.  Moreover, he has not, and cannot, allege that his role at Nymbus changed to his detriment because he relied on Nymbus' purported promise to provide him with stock in lieu of salary.  *See Miller v. Raytheon Aircraft Co.*, 229 S.W.3d 358, 379 (Tex. App. 2007) ("To show detrimental reliance, the plaintiff must show that he materially changed his position in reliance on the promise.").  As such, because Sharp fails to allege the detrimental reliance, the Court should dismiss Counterclaims II (statutory fraud) and III (common law fraud).

### C.   Sharp's Purported Claims for Fraudulent Non-Disclosure and Fraudulent Inducement Fail as a Matter of Law.

Sharp has not, and cannot, state a claim for either fraudulent non-disclosure or fraudulent inducement.  Accordingly, Counterclaim XII should be dismissed for this additional reason as well.

### 1.   Alleged Fraudulent Non-Disclosure

To state a claim for fraudulent non-disclosure under Texas law, a plaintiff must demonstrate: "(1) the defendant concealed or failed to disclose a material fact within the knowledge of defendant, (2) the defendant had a duty to disclose the facts to the plaintiff, (3) the defendant knew that the plaintiff was ignorant of the fact and did not have an equal opportunity to discover the truth, (4) the defendant was deliberately silent when it had a duty to speak, (5) the defendant intended to induce the plaintiff to take some action by concealing or failing to disclose the fact, and (6) the plaintiff relied on the defendant's nondisclosure, and (7) the plaintiff suffered injury as a result of acting without knowledge of the undisclosed fact."  *See Bradford v. Vento*, 48 S.W.3d 749, 755 (Tex. 2001).  But importantly "for there to be actionable nondisclosure fraud, *there must be a duty to disclose*."  *See In re Enron Corp. Sec., Derivative &*

"*ERISA*" *Litig.*, 388 F. Supp. 2d 780, 788 (S.D. Tex. 2005) (emphasis added).  Texas courts have held that there are four scenarios in which a duty to disclose may arise: "(1) where there is a special or fiduciary relationship: (2) where one voluntarily discloses partial information, but fails to disclose the whole truth; (3) where one makes a representation and fails to disclose new information that makes the earlier representation misleading or untrue; and (4) where one makes a partial disclosure and conveys a false impression."  *See id.*  "Whether such a duty exists is a question of law."  *Ralston Purina Co. v. McKendrick*, 850 S.W.2d 629, 633 (Tex. App. 1993).

Here, Sharp has not, and cannot, allege facts to support a claim for fraudulent non-disclosure.  First, Sharp does not allege that the Counterclaim Defendants owed him any special or fiduciary duties in addition to the contractual duties owed to him under the Agreement.  Second, Sharp does not allege that there was new information that the Counterclaim Defendants learned that made an earlier representation(s) untrue.  Instead, Sharp asserts that, at the time the Counterclaim Defendants made a representation to Sharp that he would receive stock, they knew that such a representation was false.  As such, Sharp's claim for fraudulent non-disclosure fails as a matter of law and the Court should dismiss this claim.  *See, e.g., City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 653 F. Supp. 2d 669, 676 (N.D. Tex. 2009) (dismissing fraudulent non-disclosure claim for failure to demonstrate the existence of a duty to disclose); *Siragusa v. Arnold*, No. 3:12-CV-04497-M, 2013 WL 5462286, at *11 (N.D. Tex. Sept. 16, 2013) (holding same).

### 2.    Alleged Fraudulent Inducement

To state a claim for fraudulent inducement under Texas law, a plaintiff must demonstrate all of the elements of a claim for common law fraud in addition to "proof of an underlying contract which was induced."  *Kevin M. Ehringer Enterprises, Inc. v. McData Services Corp.*, 646 F.3d 321, 325 (5th Cir. 2011).  Indeed, as the Supreme Court of Texas held in *Haase v.*

*Glazner*, 62 S.W.3d 795, 798 (Tex. 2001), "[w]ithout a binding agreement, there is no detrimental reliance, and thus no fraudulent inducement claim.  That is, when a party has not incurred a contractual obligation, it has not been induced to do anything."

Sharp asserts a purported claim for fraudulent inducement in the context of his allegations about having terminated his employment with Nymbus for Good Reason.  As such, Sharp neither makes clear nor specifies a contractual obligation that the Counterclaim Defendants induced him to take on as a product of a purported fraud.  *See GMAC Commercial Mortg. Corp. v. East Texas Holdings, Inc*., 441 F.Supp.2d 801, 807 (E.D. Tex. 2006) (dismissing fraudulent inducement claim where defendants failed to allege existence of an enforceable contract).  In view this pleading failure, the Court should dismiss Sharp's claim for fraudulent inducement.

## III.      Sharp Cannot Recover Exemplary Damages.

Sharp's counterclaims for statutory fraud and common law fraud are each accompanied by a demand for exemplary damages.  *See* Answer at ¶¶ 131, 145, 185, 198.  If the Court dismisses these counterclaims, then Sharp's only remaining counterclaims will be for breach of contract (and the alternative equitable claims for promissory estoppel and assumpsit), and an alleged FLSA violation.[4]  Under Texas law, a plaintiff cannot recover exemplary damages for a breach of contract.  *See Jim Walter Homes*, 711 S.W.2d at 618 (citing *Bellefonte Underwriters Ins. Co. v. Brown*, 704 S.W.2d 742 (Tex. 1986)); *Amoco Prod. Co. v. Alexander*, 622 S.W.2d 563 (Tex. 1981).  Further, even "[g]ross negligence in the breach of contract will not entitle an injured party to exemplary damages because even an intentional breach will not."  *Id.* (citing *Amoco Prod. Co*., 622 S.W.2d at 571; *City Prod. Corp. v. Berman*, 610 S.W.2d 446, 450 (Tex.

---

[4] The FLSA provides for actual damages based on a calculation of minimum wage as well as liquidated damages but does not provide for an award of exemplary damages.

1980)).  "To support an award of exemplary damages in this case, the plaintiff must prove a distinct tortious injury with actual damages."  *Jim Walter Homes*, 711 S.W.2d at 618 (citing *Bellefonte*, 704 S.W.2d at 742; *Luna v. N. Star Dodge Sales, Inc*., 667 S.W.2d 115 (Tex. 1984); *City Prod. Corp*., 610 S.W.2d at 450) (reversing award of exemplary damages where "[t]here were no other injuries ... other than loss of the benefit of the bargain").  As such, if it dismisses Sharp's purported counterclaims for fraud, then the Court should also dismiss Sharp's corresponding claims for exemplary damages.

## CONCLUSION

For the foregoing reasons, as provide for in Federal Rule of Civil Procedure 12(c), Nymbus respectfully requests that the Court dismiss with prejudice Counterclaims II (statutory fraud), III (common law fraud), VII (statutory fraud), VIII (common law fraud) and XII (common law fraud, fraudulent nondisclosure and fraudulent inducement) filed by Sharp, as well Sharp's separate demands for exemplary damages.

By:  /s/ *Scott L. Vernick*
Scott Vernick
Fox Rothschild LLP
2000 Market Street, 20th Floor
Philadelphia, PA 19103
215-299-2150
*Counsel for Nymbus, Inc.,*
*Scott Killoh, and Harry Flood*

John A. Wait
Alexandra L. Sobol
Fox Rothschild LLP
101 Park Avenue, 17th Floor
New York, NY 10018
Tel: (212) 878-7900
Fax: (212) 692-0940
*Counsel for Nymbus, Inc.,*
*Scott Killoh, and Harry Flood*

John H. Kane (ct12273)
Kathleen Elizabeth Dion (ct28605)
Robinson & Cole, LLP
280 Trumbull St.
Hartford, CT 06103
Tel: (860)-275-8231
Fax: (860)-275-8299
*Counsel for Nymbus, Inc.,*
*Scott Killoh, and Harry Flood*

## <u>CERTIFICATION</u>

I hereby certify that on August 22, 2018, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System

*/s/ Kathleen E. Dion*
Kathleen E. Dion